# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

DURANT INTERNATIONAL CORP,                    Chapter 15

    Debtor in a Foreign Proceeding.
_____/

In re:

KILDARE FINANCE LTD                           Chapter 15

    Debtor in a Foreign Proceeding.
_____/

In re:

MACDOEL INVESTMENT LIMITED                    Chapter 15

    Debtor in a Foreign Proceeding.
_____/

**DECLARATION OF MATTHEW RICHARDSON IN SUPPORT OF CHAPTER 15
PETITION FOR RECOGNITION OF A FOREIGN PROCEEDING**

    I, MATTHEW RICHARDSON ("Joint Liquidator" or "Foreign Representative"), court-appointed joint liquidator and the foreign representative for the bankruptcy estates of DURANT INTERNATIONAL CORP ("Durant"), KILDARE FINANCE LTD ("Kildare"), and MACDOEL INVESTMENT LIMITED ("MacDoel") (collectively, the "Debtors"), hereby declare under penalty of perjury under the laws of the United States as follows:

    1.    I am over the age of 18 and I am competent to make this Declaration. All statements contained herein are true and correct to the best of my knowledge and belief, my review of the relevant documents and from conversations with relevant personnel. If called upon, I could testify

as to all matters set forth in this Declaration based upon my own personal knowledge, except for those portions specified as being otherwise.

2.    This Declaration is submitted in support of the Chapter 15 Petition for Recognition of  Foreign Proceeding (the "Petition")[1] and the Verified Motion for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code (the "Verified Motion"), seeking entry of an Order granting (i) recognition of the BVI Bankruptcy Cases as "foreign main proceedings" under  section 1517 of the Bankruptcy Code; (ii) related relief under sections 1520, 1521; and (iii) other applicable relief under the Bankruptcy Code.

## BACKGROUND

### A.  The Debtors' Formation

3.    Durant and MacDoel were incorporated in the British Virgin Islands on July 2, 1996.

4.    Kildare was incorporated in the British Virgin Islands on November 21, 1996.

5.    All three Debtors have their registered offices in Road Town, Tortola, British Virgin Islands.

6.    Durant, Kildare and MacDoel are part of a group of companies that has at all times been both controlled and beneficially owned by Paulo Salim Maluf ("Paulo Maluf") or members of his family.

### B.  The Fraud Against the Creditors

7.    My investigations to date show that the Debtors and their affiliates had no legitimate purpose and were only used as vehicles to launder the proceeds of a fraud perpetrated

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Verified Motion.

by Paulo Maluf against the Municipality of Sao Paulo (the "Municipality") while he was its Mayor between January 1993 and December 1996.

8.      In or around 1999, it was discovered that Paulo Maluf and those closely related to him had perpetrated a wide-scale fraud against the Municipality in connection with major public works projects, including the project to construct Avenida Agua Espraiada in Sao Paulo, whereby in the region of US$200 million was misappropriated from the Municipality by way of bribes, secret commissions and other fraudulent payments.

9.      Since then, Paulo Maluf and his family members have been investigated and indicted for money laundering in many countries, including Brazil, United States, Switzerland, and France. Paulo Maluf, Flavio Maluf and other Malufs have been convicted for money laundering by Brazilian courts related to the fraud perpetrated in the construction of Avenida Agua Espraiada, in Sao Paulo. It is understood that Paulo Maluf is currently under house arrest after being sentenced to seven years and nine months of prison, which sentence was confirmed by the Brazilian Supreme Court.

**C.  The Fraud Investigations**

10.      The fraud has and continues to be investigated by authorities from various jurisdictions including the Municipality and the Federal Republic of Brazil, the Jersey Police Financial Crimes Unit ("Jersey Police"), the Money Laundering Reporting Office of the Federal Office for Police, Bern, Switzerland (the "Swiss Police"), and the Joint Liquidators.

11.      As reported by news accounts and court filings, the Municipality and the Federal Republic of Brazil ("Brazilian Creditors") became aware of the fraud in 1999, when they were contacted by an Inspector of the Jersey Police requesting information about the existence of criminal investigations or convictions in Brazil against Paulo Maluf, Flavio Maluf and various

other Maluf family members following the submission of a suspicious transaction report to the money laundering authorities in Jersey.

12.     As reported by news accounts and court filings, the Jersey's Police investigation put the financial institutions in Jersey on notice which I understand resulted in the freezing of accounts at these institutions in 2000. The Jersey Police also advised the Brazilian Creditors that the main source of funding for the accounts in Jersey had been bank accounts in Switzerland.

13.     Moreover, I am aware that the Jersey Attorney General commenced his own investigation as to whether the monies in Jersey represented the proceeds of money laundering and, if so, whether any offence had been committed within Jersey's criminal jurisdiction.

14.     In mid-2001, the Brazilian Creditors received an official communication from the Swiss Police. Such communication revealed that the Swiss authorities were also investigating potential money laundering by the Malufs through bank accounts in Switzerland.

15.     The Debtors and its affiliates were the subject of pre-action Norwich Pharmacal disclosure orders (a "Norwich Pharmacal" is a proceeding to obtain information from a witness for use in a contemplated litigation) in Jersey. Significant amounts of information, including banking records, were disclosed to the Brazilian Creditors under these orders.

16.     As part of the ongoing communications between the Brazilian and Jersey authorities, the Brazilian authorities submitted official letters to the Jersey authorities in 2003 and 2005 to obtain information. The Malufs contested this process, however, ultimately disclosure was made to the Brazilian authorities.

17.     As a result of the investigations undertaken by *inter alia* the Brazilian Creditors, the Jersey Police and the Swiss Police, a detailed understanding of the fraud has been developed

including the involvement in the fraud of a number of companies owned and/or controlled by the Maluf family, including Durant, Kildare, and MacDoel.

### D. The Jersey Proceedings Against Kildare and Durant

18.    In 2009, the Brazilian Creditors commenced proceedings against Kildare and Durant in the Royal Court of Jersey claiming certain monies held in bank accounts at Deutsche Bank in Jersey in the names of those companies. The Brazilian Creditors alleged that, at material times, Kildare and Durant were beneficially owned and controlled by the Maluf family, and their knowledge of the fraud was to be imputed such that the monies in the bank accounts were received with the knowledge of their tainted origin (the "Jersey Proceedings").

19.    The Brazilian Creditors sought to prove the fraud in the Jersey Proceedings by reference to only a sample of the transactions, those conducted in January 1998 only. During that short period, the information showed monies flowing through Kildare and Durant, but not MacDoel.  For that reason, MacDoel was not part of the Jersey Proceedings.

20.    After a lengthy contested trial, the Jersey Court "unhesitatingly" concluded in a written judgment dated November 16, 2012, that Kildare and Durant were liable to the Brazilian Creditors as constructive trustees to the extent of US$10,500,055.35.

21.    On April 22, 2013, the Jersey Court issued its final Order ("Jersey Judgment"), stating *inter alia*: (a) Kildare and Durant were to pay the Brazilian Creditors US$28,344,453.84 forthwith; (b) simple interest at the rate of US Prime +1 % was to be payable on the sum of US$28,344,453.84 from November 16, 2012, continuing until payment; and (c) the Brazilian Creditors' costs of the proceedings were to be paid by Kildare and Durant on the indemnity basis.

22.     Prior to the appointment of the Joint Liquidators, the Brazilian Creditors recovered US$3,439,692.36 against the Jersey Judgement from accounts in the names of Kildare and Durant in Jersey and applied such monies to the outstanding judgment.

23.     Kildare and Durant made no effort to pay the unpaid part of the Jersey Judgement. As of February 16, 2018, the sum outstanding inclusive of interest was US$30,865,754.87.  The Brazilian Creditors then sought the appointment of liquidators.

24.     It should be noted that the Jersey Judgment represents only a very small part of the total funds derived from the fraud that were later verified in the investigations, because the Jersey Judgment only reflects one month's worth of transactions.  The total amount of funds derived from the fraud is in the region of US$200 million and at present claims against the estates of the three Debtors, submitted on a joint and several basis, amount to at least US$172 million.

**E.  The BVI Bankruptcy Proceedings Regarding Kildare and Durant**

25.     On July 26, 2017, the Brazilian Creditors applied to the High Court of Justice of the British Virgin Islands ("BVI Court") to place Kildare and Durant into liquidation (together with the liquidation proceeding related to MacDoel below, the "BVI Liquidation Proceedings").

26.     On November 8, 2017, the BVI Court entered orders granting relief, ordering the liquidation of Kildare and Durant, and appointing Marcus Wide and Kevin Hellard as Joint Liquidators of the two debtors. *See* **Composite Exhibit 1**.

27.     On December 20, 2018, the BVI Court made an order giving permission to Marcus Wide to resign from office and appointing myself as a Joint Liquidator along with Kevin Hellard. The change was effective as of December 31, 2018 *See* **Exhibit 2**.

**F. The BVI Bankruptcy Proceedings Regarding MacDoel**

28.    Although MacDoel was not a party to the Jersey Proceedings, The Brazilian Creditors, aided by a number of parties including the Jersey Police and the Swiss Police, have taken significant steps over a large number of years to investigate the fraud, including MacDoel's role in it.  In 2009, the Brazilian Creditors filed a Civil Claim in Brazil against *inter alia* MacDoel.

29.    It is clear from the above investigations and those undertaken by the Joint Liquidators that MacDoel played a role in the fraud and was a conduit in the same way Kildare and Durant were, for moving funds misappropriated through the fraud.

30.    The Joint Liquidators identified in the books of Kildare net payments made to and on behalf of MacDoel in the amount total amount of U\$4,033,873, without consideration or evidence of repayment.

31.    On October 18, 2018, the Joint Liquidators served a statutory demand on MacDoel seeking repayment of that amount. MacDoel sought to set aside the statutory demand, but withdrew that application at the last minute.

32.    On April 8, 2019, the BVI Court granted relief, ordered the liquidation of MacDoel, and appointed Kevin Hellard and I as Joint Liquidators of MacDoel. *See* **Exhibit 3**.

**G. The Pooling of the Estates of the Debtors in BVI**

33.    On December 4, 2019, the BVI Court entered an order pooling the assets and liabilities of the estates of all three Debtors.

**H. The Joint Liquidators in the BVI Liquidation Proceedings**

34.    The Joint Liquidators performed numerous activities on behalf of the Debtors after the commencement of the BVI Bankruptcy Proceedings and before filing the Petition that were not insignificant. More specifically, a substantial part of the Joint Liquidators' activity performed

until now consisted of coordinating from the BVI investigations conducted both in the BVI and in foreign jurisdictions related to the Debtors' assets and the use of the Debtors and their subsidiaries to perpetrate the fraud.

35.    For instance, some of the activities performed by the Joint Liquidators on behalf of the Debtors within the investigations were: (i) obtained books and records from the Debtors' former advisors, banks, and other third parties in the BVI and abroad to analyze the Debtors' assets and fraudulent transfers; (ii) placed advertisements in the BVI, Jersey, and Brazil announcing the Joint Liquidators' appointment and inviting potential creditors to contact them; (iii) conducted discovery of documents and information from the Debtors' shareholders and service providers; (iv) reviewed records of the Debtors to identify potential creditors; (v) wrote to members of the Maluf family involved in the matter; (vi) conducted searches in the BVI court registry and other publicly available databases to determine whether other actions had been commenced against the Debtors and its affiliates; and (vii) conducted forensic analysis of banking records of financial institutions that provided services to the Debtors and its affiliates.

36.    Moreover, the Joint Liquidators performed further activities from the BVI in parallel with the investigations, such as: (i) organized meetings with the Brazilian Creditors; (ii) made requests to the BVI Court to, among other things, authorize the application for recognition of the BVI Liquidation Proceedings in foreign jurisdictions, to send a letter of request of assistance to Jersey, to commence a liquidation proceeding in relation to MacDoel, and to seek to unify the estates of the Debtors in a pool; (iii) had the BVI Liquidation Proceedings recognized in Jersey; (iv) sought cooperation from Jersey banks to obtain control over assets of the Debtors and its affiliates; (v) retained attorneys in foreign jurisdictions to provide legal advice and to take legal action to recover the Debtors' assets; (vi) engaged agents in a foreign jurisdiction to hold shares

owned by the Debtors as required by local law; (vii) demanded from a foreign company the payment of dividends owed to the Debtors; (viii) negotiated the assignment of a loan with a value of in excess of US$20 million, issued by Deutsche Bank on behalf of Kildare, from Deutsche Bank to Kildare and commenced steps to recover the loan and (ix) obtained funding for payment of expenses and costs related to the investigation of the fraud and the recovery of assets for the Debtors' estate.

37.    As a joint liquidator of the Debtors, I have the power to, among other things, administer and supervise the liquidation of the Debtors' assets, investigate the actual causes of the liquidation, and, when necessary and with the court's authorization, pursue causes of action for the benefit of creditors.  I have authority to act as the Debtors' foreign representative to seek Chapter 15 recognition of the BVI Bankruptcy Cases or any other auxiliary proceedings abroad.

38.    For the reasons set forth below, I am advised of the following: (i) that I am a duly appointed "foreign representative" of the BVI Bankruptcy Proceedings and that the BVI Bankruptcy Proceedings constitutes "foreign proceedings" within the meaning of subsections 101(23) and (24) of the Bankruptcy Code, respectively; (ii) that this case was properly commenced in accordance with the requirements of the Bankruptcy Code; and (iii) that the BVI Bankruptcy Proceedings satisfy all the requirements to be recognized as "foreign main proceedings" under Chapter 15 of the Bankruptcy Code.

39.    Based on the latest findings in the investigations, the creditors have claims against the Debtors of more than US$172 million.

40.    Because my investigation is ongoing, I am not yet able to ascertain the total value and/or location of the Debtors' assets.

## **GROUNDS FOR RECOGNITION**

41.     As judicial administrator, I am bestowed with the power to, among other things, investigate the affairs of the Debtors for purpose of recovering assets for the benefit of the creditors.  This includes pursuing any available causes of action.

42.     As stated above, the Debtors participated in the fraud against the Brazilian Creditors.  As joint liquidator, I am charged with conducting an analysis of the Debtors and their related entities and to understand the activities related to the fraud.  In particular, I need to investigate the business, affairs, and worldwide dealings of the Debtors' principals and other relevant related companies to, among other things, reconstruct their affairs in relation to the Debtors, the fraud, and the resulting BVI Bankruptcy Proceedings.

43.     Additionally, I have learned through investigations that assets of the Debtors may be concealed in the United States and in foreign tax havens by using names of the relatives of the Debtors' principals and offshore entities.  As a result, I need to investigate the nature and extent of any activities undertaken by the Debtors in the United States and the assets of the Debtors.  Also, I need to investigate the possibility that assets in the United States may have been acquired using funds belonging to the Debtors.

44.     I am seeking recognition to, among other things, recover the Debtors' assets as well as other documentary and testimonial evidence from witnesses in furtherance of my investigative and asset recovery efforts as part of the BVI Bankruptcy Cases.

45.     Thereafter, I hope to make recoveries to the extent possible, including by filing actions and asserting such proprietary claims as may be available to me in the United States.  I may also bring claims against any third parties that are subject to suit and may have damaged or owe money to the Debtors in the United States, which may be subject to tracing claims.

## COMPLIANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 1007(A)(4)

46.     Pursuant to Federal Rule of Bankruptcy Procedure 1007(a)(4), I hereby disclose the following information:

a.   MATTHEW RICHARDSON and KEVIN HELLARD are the duly appointed "joint liquidators" in the BVI Liquidation Cases and the authorized foreign representatives of the Debtors.

b.   MATTHEW RICHARDSON's and KEVIN HELLARD's address is as follows:

> Grant Thornton (British Virgin Islands) Limited
> 171 Main Street, The Barracks, 2nd Floor
> Road Town, Tortola, British Virgin Islands

For purposes of this Bankruptcy Case, I respectfully request that any correspondence be sent to:

> Grant Thornton (British Virgin Islands) Limited
> c/o Sequor Law, P.A.
> Attention Gregory S. Grossman or Raul Torrao
> 1111 Brickell Avenue, Suite 1250
> Miami, Florida 33131

c.   I am not aware of any litigation pending in the United States in which the Debtors are a party.

d.   No provisional relief is being sought under 11 U.S.C. § 1519 against any particular entity or person at this time.   However, as foreign representative of the Debtors, the joint liquidators reserve the right to seek provisional relief as needed.

## SECTION 1515(C) STATEMENT

47.     Other than this Chapter 15 Petition, there are ongoing foreign proceedings related to the Debtors filed by the Foreign Representatives before the Royal Court of Jersey, as that term is defined under section 101(23) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 10 of December, 2019

_____
MATTHEW RICHARDSON, as Joint Liquidator in
the Debtors' court-approved liquidation proceeding

# COMPOSITE EXHIBIT 1



**THE EASTERN CARIBBEAN SUPREME COURT**

**IN THE HIGH COURT OF JUSTICE**

**VIRGIN ISLANDS**

**COMMERCIAL DIVISION**

**In The Insolvency Act 2003 and The Insolvency Rules 2005**

**CLAIM NO: BVIHC (COM) 2017/0134**

**BETWEEN:**

(1)   **THE FEDERAL REPUBLIC OF BRAZIL**

(2)   **THE MUNICIPALITY OF SAO PAULO**

<u>Applicants</u>

**and**

**DURANT INTERNATIONAL CORP.**

<u>Respondent</u>

---

**ORDER APPOINTING LIQUIDATORS**

---

**BEFORE:**      The Honourable Mr Justice Gerhard Wallbank [Ag]

**DATED:**        6 November 2017

**ENTERED:**     9 November 2017

**UPON THE APPLICATION** of (1) The Federal Republic of Brazil and (2) The Municipality of Sao Paulo ("**the Applicants**") by Originating Application dated 26 July 2017

**UPON HEARING** Miss Arabella di Iorio (appearing by telephone) for the Applicants Mr Timothy P de Swardt attending (also by telephone) with a watching brief for Durant International Corp. ("**the Company**")

**UPON READING** the affidavit of Andrew Witts dated 26 July 2017 with Exhibit "AW1" and the affidavits of Khephra Sylvester dated 16 August 2017 with Exhibit "KS1" and 25 October 2017 with Exibit "KS2" filed in support of the application

**AND UPON** the Insolvency Division of the Financial Services Commission having confirmed by letter dated 6 November 2017 that the requirements of section 483 of the Insolvency Act 2003 have been satisfied with respect to the appointment of Mr Kevin Hellard

**IT IS ORDERED THAT:**

1.   The Company be wound up by the Court under the provisions of the Insolvency Act, 2003.

2.   Mr Marcus Wide of Grant Thornton (British Virgin Islands), 171 Main Street, The Barracks, 2nd Floor, Road Town, Tortola VG1110, British Virgin Islands, and Mr Kevin Hellard of Grant Thornton UK LLP, 30 Finsbury Square, London EC2P 2YU be appointed joint and several liquidators over the Company ("**the Liquidators**").

3.   The Liquidators be at liberty to employ such other counsel, solicitors or other agents in the British Virgin Islands or elsewhere to assist them with their duties as will be required at such hourly rates as agreed from time to time by the Liquidators and those other solicitors or agents.

4.   The Liquidators shall have power, with the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

   (a)   Power to pay any class of creditor in full.

   (b)   Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Company, whether present or future, certain or contingent, ascertained or not.

   (c)   Power to compromise, on such terms as may be agreed:

      (i)   calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the Company and any person; and

      (ii)   questions in any way relating to or affecting the assets or the liquidation of the Company;

   and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

(d)     Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company.

5.     The Liquidators shall have power, without requiring the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

(a)     Power to carry on the business of the Company so far as may be necessary for its beneficial liquidation.

(b)     Power to sell or otherwise dispose of property of the Company.

(c)     Power to do all acts and execute, in the name and on behalf of the Company, any deeds, receipts or other documents.

(d)     Power to use the Company's seal.

(e)     Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for the balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

(f)     Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company with the same effect with respect to the Company's liability as if the bill or note had been drawn, accepted, made or endorsed by or on behalf of the Company in the course of its business.

(g)     Power to borrow money, whether on the security of the assets of the Company or otherwise.

(h)     Power to take out in their official names letters of administration to any deceased member or past  member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate that cannot conveniently be done in the name of the Company.

For the purpose of enabling the Liquidators to take out letters of administration or do any other act under this paragraph, to be due to the Liquidators themselves.

(i)     Power to call meetings of creditors or members for:

(i)     the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

(ii) the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

(iii) such other purpose connected with the liquidation as the Liquidators consider fit.

(j) Power to appoint an agent to do any business that the liquidators are unable to do themselves, or which can be more conveniently done by an agent.

6. That the costs of the liquidation, including the proper fees and disbursements of the Liquidators, be paid out of the assets of the Company in priority to all other claims.

7. That no application need be made to the Court or any creditors committee for approval of the Liquidators' remuneration if the Liquidators' remuneration is the subject of a private funding arrangement, unless and until such funding is to be repaid out of the assets of the Company.

8. That the Applicant's costs of this application be paid out of the assets of the Company as costs in the liquidation.


BY ORDER OF THE COURT

Dep. REGISTRAR

**THE EASTERN CARIBBEAN SUPREME COURT**

**IN THE HIGH COURT OF JUSTICE**

**VIRGIN ISLANDS**

**COMMERCIAL DIVISION**

**In The Insolvency Act 2003 and The Insolvency Rules 2005**

**CLAIM NO: BVIHC (COM) 2017/0134**

**BETWEEN:**

      **(3)**    **THE FEDERAL REPUBLIC OF BRAZIL**

      **(4)**    **THE MUNICIPALITY OF SAO PAULO**

<u>Applicants</u>

**and**

**DURANT INTERNATIONAL CORP.**

<u>Respondent</u>

---

**ORDER**

**APPOINTING LIQUIDATORS**

---

Maples and Calder
Sea Meadow House
Road Town
Tortola
British Virgin Island
Tel: +1 284 852 3000
Fax: +1 284 852 3097
(Ref: ADI/650318)
Legal Practitioners for the Applicants

FILED
Registrar's Office

NOV 0 8 2017

Virgin Islands
at ___12:28pm___

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

In The Insolvency Act 2003 and The Insolvency Rules 2005

CLAIM NO: BVIHC (COM) 2017/0135



COMMERCIAL DIVISION ECSC
COURT FEES

$ 25.00
Virgin Islands

BETWEEN:

(1) **THE FEDERAL REPUBLIC OF BRAZIL**

(2) **THE MUNICIPALITY OF SAO PAULO**

<u>Applicants</u>

**and**

**KILDARE FINANCE LTD.**

<u>Respondent</u>

---

### ORDER APPOINTING LIQUIDATORS

---

**BEFORE:**    The Honourable Mr Justice Gerhard Wallbank [Ag]

**DATED:**    6 November 2017

**ENTERED:**    November 2017

**UPON THE APPLICATION** of (1) The Federal Republic of Brazil and (2) The Municipality of Sao Paulo ("**the Applicants**") by Originating Application dated 26 July 2017

**UPON HEARING** Miss Arabella di Iorio (appearing by telephone) for the Applicants Mr Timothy P de Swardt attending (also by telephone) with a watching brief for Kildare Finance Ltd. ("**the Company**")

**UPON READING** the affidavit of Andrew Witts dated 26 July 2017 with Exhibit "AW1" and the affidavits of Khephra Sylvester dated 16 August 2017 with Exhibit "KS1" and 25 October 2017 with Exhibit "KS2" filed in support of the application

**AND UPON** the Insolvency Division of the Financial Services Commission having confirmed by letter dated 6 November 2017 that the requirements of section 483 of the Insolvency Act 2003 have been satisfied with respect to the appointment of Mr Kevin Hellard

**IT IS ORDERED THAT:**

1.   The Company be wound up by the Court under the provisions of the Insolvency Act, 2003.

2.   Mr Marcus Wide of Grant Thornton (British Virgin Islands), 171 Main Street, The Barracks, 2nd Floor, Road Town, Tortola VG1110, British Virgin Islands, and Mr Kevin Hellard of Grant Thornton UK LLP, 30 Finsbury Square, London EC2P 2YU be appointed joint and several liquidators over the Company ("**the Liquidators**").

3.   The Liquidators be at liberty to employ such other counsel, solicitors or other agents in the British Virgin Islands or elsewhere to assist them with their duties as will be required at such hourly rates as agreed from time to time by the Liquidators and those other solicitors or agents.

4.   The Liquidators shall have power, with the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

    (a)   Power to pay any class of creditor in full.

    (b)   Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Company, whether present or future, certain or contingent, ascertained or not.

    (c)   Power to compromise, on such terms as may be agreed:

        (i)   calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the Company and any person; and

        (ii)   questions in any way relating to or affecting the assets or the liquidation of the Company;

    and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

2

(d)     Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company.

5.     The Liquidators shall have power, without requiring the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

(a)     Power to carry on the business of the Company so far as may be necessary for its beneficial liquidation.

(b)     Power to sell or otherwise dispose of property of the Company.

(c)     Power to do all acts and execute, in the name and on behalf of the Company, any deeds, receipts or other documents.

(d)     Power to use the Company's seal.

(e)     Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for the balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

(f)     Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company with the same effect with respect to the Company's liability as if the bill or note had been drawn, accepted, made or endorsed by or on behalf of the Company in the course of its business.

(g)     Power to borrow money, whether on the security of the assets of the Company or otherwise.

(h)     Power to take out in their official names letters of administration to any deceased member or past  member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate that cannot conveniently be done in the name of the Company.

For the purpose of enabling the Liquidators to take out letters of administration or do any other act under this paragraph, to be due to the Liquidators themselves.

(i)     Power to call meetings of creditors or members for:

(i)     the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

(ii)    the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

(iii)    such other purpose connected with the liquidation as the Liquidators consider fit.

(j)    Power to appoint an agent to do any business that the liquidators are unable to do themselves, or which can be more conveniently done by an agent.

6.    That the costs of the liquidation, including the proper fees and disbursements of the Liquidators, be paid out of the assets of the Company in priority to all other claims.

7.    That no application need be made to the Court or any creditors committee for approval of the Liquidators' remuneration if the Liquidators' remuneration is the subject of a private funding arrangement, unless and until such funding is to be repaid out of the assets of the Company.

8.    That the Applicant's costs of this application be paid out of the assets of the Company as costs in the liquidation.

BY ORDER OF THE COURT

REGISTRAR

**THE EASTERN CARIBBEAN SUPREME COURT**

**IN THE HIGH COURT OF JUSTICE**

**VIRGIN ISLANDS**

**COMMERCIAL DIVISION**

In The Insolvency Act 2003 and The Insolvency Rules 2005

**CLAIM NO: BVIHC (COM) 2017/0135**

**BETWEEN:**

(3) **THE FEDERAL REPUBLIC OF BRAZIL**

(4) **THE MUNICIPALITY OF SAO PAULO**

<u>Applicants</u>

**and**

**KILDARE FINANCE LTD.**

<u>Respondent</u>

---

**ORDER APPOINTING LIQUIDATORS**

---

Maples and Calder
Sea Meadow House
Road Town
Tortola
British Virgin Island
Tel: +1 284 852 3000
Fax: +1 284 852 3097
(Ref: ADI/650318)
Legal Practitioners for the Applicant s

# EXHIBIT 2

FEE STAMPS ON
ORIGINAL
25.00

**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS**
**COMMERCIAL DIVISION**

Claim No.  BVIHCOM 2018/0191

IN THE MATTER OF THE INSOLVENCY ACT 2003

BETWEEN:

REGISTRAR HIGH COURT
COMMERCIAL DIVISION
10-01-2019
2.00
VIRGIN ISLANDS

**MARCUS WIDE**

**Applicant**

**-and-**

**MATTHEW RICHARDSON**

**Respondent**

---

**ORDER**

---

**BEFORE THE HONOURABLE JUSTICE ADDERLEY**

DATED:        The 20th day of December 2018

ENTERED:    The     10    day of January 2019

**UPON** the Applicant's application for a block transfer order in respect of the appointments which he holds to another licensed insolvency practitioner as set out in Schedule A to this order

**AND UPON READING** the Originating Application, the First Affidavit of Marcus Wide and the forms of consent given by the Respondent

**AND UPON THE COURT NOTING** that the BVI Financial Services Commission was given informal notice of this application

**AND UPON THE COURT** exercising its discretion under CPR 11.14(d) to dispense with a hearing

**IT IS HEREBY ORDERED THAT:-**

1.    Marcus Wide of Grant Thornton (British Virgin Islands) Ltd, 171 Main Street, The Barracks, 2nd Floor, PO Box 4259, Road Town, Tortola, British Virgin Islands ("**Grant Thornton**"), the Joint Liquidator and Joint Provisional Liquidator of certain companies incorporated in the BVI as detailed in Schedule A to this order ("**the BVI Companies**"), be given permission to resign from office.

2.    The release of Mr Wide as Joint Liquidator of the BVI Companies and, in respect of two of the companies, Joint Provisional Liquidator, shall be effective as of 31 December 2018.

3.    Matthew Richardson of Grant Thornton is appointed as Joint Liquidator of the BVI Companies in full liquidation in place of Mr Wide alongside the existing Joint Liquidator as detailed in Schedule A.

4.    Mr Richardson is appointed as Joint Provisional Liquidator of the BVI Companies in provisional liquidation in place of Mr Wide alongside the existing Joint Provisional Liquidator as detailed in Schedule A.

5.    Each of Mr Richardson's appointments under this Order shall be effective as of 31 December 2018.

6.    Mr Wide shall file a copy of this Order, including Schedule A hereto (redacted as appropriate), on the Court file for each of the full and provisional liquidations in respect of which he was appointed and has now been released.

7.    Mr Wide shall as soon as practicable:

    (a)    Write to the creditors of those BVI Companies in full liquidation to put them on notice of this Order.

    (b)   In respect of those appointments not originally made by the Court, deliver a copy of this Order, including Schedule A (redacted as appropriate), to the person or persons who appointed him.

8.     Mr Richardson shall within 21 days of his appointment as Joint Liquidator under this Order advertise his appointment.

9.     No order as to costs.

By the Court

_____

(Deputy) Registrar

**SCHEDULE A**

| | Provisional Liquidations | Company Number | Name of joint appointee | Date of Appointment | Claim Number |
|---|---|---|---|---|---|
| 1 | OAS Investments Limited | 1503490 | Mark McDonald | 16-Apr-15 | BVIHC (COM) 0035 OF 2015 |
| 2 | OAS Finance Limited | 1766299 | Mark McDonald | 16-Apr-15 | BVIHC (COM) 0034 OF 2015 |
| | **Liquidations - appointment by members** | | | | |
| 3 | Next Cab Ventures Offshore Inc | 1886447 | Mark McDonald | 11-May-17 | NA |
| 4 | Next Pay Ventures Offshore Inc | 1886284 | Mark McDonald | 11-May-17 | NA |
| 5 | Next Chat Ventures Offshore Inc | 1886263 | Mark McDonald | 9-May-17 | NA |
| 6 | Progressive Power offshore Inc | 1886268 | Mark McDonald | 11-May-17 | NA |
| 7 | Deep Ocean Offshore Inc | 1885446 | Mark McDonald | 11-May-17 | NA |
| 8 | Next Call Ventures Offshore Inc | 1886285 | Mark McDonald | 11-May-17 | NA |
| 9 | G Island Inc | 1814892 | Mark McDonald | 19-May-17 | NA |
| 10 | G Collection Inc | 1838533 | Mark McDonald | 19-May-17 | NA |
| 11 | G Malta Inc | 1904093 | Mark McDonald | 19-May-17 | NA |
| 12 | G Miami Inc | 1837937 | Mark McDonald | 19-May-17 | NA |
| 13 | G London Inc | 1837933 | Mark McDonald | 19-May-17 | NA |
| 14 | G Sydney Inc | 1837949 | Mark McDonald | 19-May-17 | NA |
| 15 | G Private Investments Inc | 1636716 | Mark McDonald | 19-May-17 | NA |
| 16 | Onix Capital Inc | 1878018 | Mark McDonald | 16-Oct-17 | NA |
| 17 | First Millenium Corp | 1799661 | Mark McDonald | 12-Oct-17 | NA |
| | Trackingfield Development Ltd | 1798152 | Mark McDonald | 12-Oct-17 | NA |
| 18 | Norwind Shipping Ltd | 1419406 | Mark McDonald | 10-Oct-17 | NA |
| 19 | Torstone Group Ltd | 1054398 | Mark McDonald | 11-Oct-17 | NA |
| 20 | | | | | |
| | **Liquidations - appointment by court** | | | | |
| 21 | Barrington Capital Group Limited | 406230 | Mark McDonald | 30-Apr-13 | BVIHCM 2013/43 |
| 22 | Sylmord Trade Inc. | 1380591 | Mark McDonald | 28-Apr-14 | BVIHC (COM) 2013/0024 |
| 23 | G Personal Portfolio Inc | 1829395 | Mark McDonald | 1-May-17 | BVIHC (COM) 2017/0038 |
| 24 | Grupo Arcano Inc | 1835474 | Mark McDonald | 1-May-17 | BVIHC (COM) 2017/0039 |
| 25 | Durant International Corp. | 190274 | Kevin Hellard | 6-Nov-17 | BVIHC (COM) 2017/0134 |
| 26 | Kildare Finance Ltd. | 206924 | Kevin Hellard | 6-Nov-17 | BVIHC (COM) 2017/0135 |

## IN THE HIGH COURT OF JUSTICE
## VIRGIN ISLANDS
## COMMERCIAL DIVISION

Claim No.  BVIHCOM 2018/0191

**IN THE MATTER OF THE INSOLVENCY ACT 2003**

**BETWEEN:**

**MARCUS WIDE**

**Applicant**

-and-

**MATTHEW RICHARDSON**

**Respondent**

---

**ORDER**

---

**Martin Kenney & Co., Solicitors**
3rd Floor, Flemming House
Flemming Street
Road Town, Tortola
British Virgin Islands
Tel: 284 494 2444
 Fax: 284 494 3313

# EXHIBIT 3



**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

Claim No: BVIHCM 2019/0020

IN THE MATTER OF MACDOEL INVESTMENT LIMITED

AND IN THE MATTER OF SECTION 162 OF THE INSOLVENCY ACT, 2003

**Submitted Date:08/04/2019 12:29**

**Filed Date:08/04/2019 12:29**

**Fees Paid:72.59**

BETWEEN:

**KILDARE FINANCE LIMITED (In Liquidation)**

<u>Applicant</u>

- and -

**MACDOEL INVESTMENT LIMITED**

<u>Respondent</u>

---

## ORDER APPOINTING LIQUIDATOR

---

**BEFORE:**     The Honourable Mr Justice Michael Green QC [Ag]

**DATED:**      8 April 2019

**ENTERED:**    8 April 2019

**UPON THE APPLICATION** of Kildare Finance Limited (in Liquidation) acting by its joint and several liquidators Matthew Richardson and Kevin Hellard (the "**Applicant**")

**AND UPON HEARING** Mr Alex Hall Taylor for the Applicant

**AND UPON READING** the affidavit of Matthew Richardson dated 22 February 2019 and Exhibit "MR1" filed in support of the application

**IT IS ORDERED THAT:**

1    MacDoel Investment Limited (the "**Company**") be wound up by the Court under the provisions of the Insolvency Act, 2003.

2    Matthew Richardson of Grant Thornton (British Virgin Islands) Limited, 171 Main Street, The Barracks, 2nd Floor, Road Town, Tortola, British Virgin Islands and Kevin Hellard of Grant Thornton UK LLP, 30 Finsbury Square, London EC2P 2YU be appointed as joint and several liquidators over the Company (the "**Joint Liquidators**").

3    The Joint Liquidators be at liberty to employ such other counsel, solicitors or other agents in the British Virgin Islands or elsewhere to assist him with his duties as will be required at such hourly rates as agreed from time to time by the Liquidator and those other solicitors or agents.

4    The Joint Liquidators shall have power, with the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

    4.1    Power to pay any class of creditor in full.

    4.2    Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Company, whether present or future, certain or contingent, ascertained or not.

    4.3    Power to compromise, on such terms as may be agreed:

        (a)    calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the Company and any person; and

        (b)    questions in any way relating to or affecting the assets or the liquidation of the Company;

    and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

5    The Joint Liquidators shall have power, without requiring the sanction of the Court, to do the following things in the British Virgin Islands or elsewhere:

2

5.1     Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company.

5.2     Power to carry on the business of the Company so far as may be necessary for its beneficial liquidation.

5.3     Power to sell or otherwise dispose of property of the Company.

5.4     Power to do all acts and execute, in the name and on behalf of the Company, any deeds, receipts or other documents.

5.5     Power to use the Company's seal.

5.6     Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for the balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

5.7     Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company with the same effect with respect to the Company's liability as if the bill or note had been drawn, accepted, made or endorsed by or on behalf of the Company in the course of its business.

5.8     Power to borrow money, whether on the security of the assets of the Company or otherwise.

5.9     Power to take out in his official name letters of administration to any deceased member or past  member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate that cannot conveniently be done in the name of the Company.

        For the purpose of enabling the Joint Liquidators to take out letters of administration or do any other act under this paragraph, to be due to the Joint Liquidators themselves.

5.10    Power to call meetings of creditors or members for:

    (a)    the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

    (b)    the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

    (c)    such other purpose connected with the liquidation as the Joint Liquidators considers fit.

5.11    Power to appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.

5.12    Power to appoint an agent to do any business that the liquidator is unable to do himself, or which can be more conveniently done by an agent.

5.13    Power to, or otherwise be sanctioned to, pass resolutions on behalf of the Company to appoint a new registered agent or replace the existing registered agent.

5.14    Power to, or otherwise be sanctioned to, pass resolutions on behalf of the Company to appoint a new director(s) or replace the existing director(s).

6    That the costs of the liquidation, including the proper fees and disbursements of the Joint Liquidators, be paid out of the assets of the Company in priority to all other claims.

7    That no application need be made to the Court or any creditors committee for approval of the Joint Liquidators' remuneration if the Joint Liquidators' remuneration is the subject of a private funding arrangement, unless and until such funding is to be repaid out of the assets of the Company.

8    That the Applicant's costs of this application be paid out of the assets of the Company as costs in the liquidation.

**BY ORDER OF THE COURT**

**REGISTRAR**

**THE EASTERN CARIBBEAN SUPREME COURT**

**IN THE HIGH COURT OF JUSTICE**

**VIRGIN ISLANDS**

**Claim No:  BVIHCM 2019/0020**

**IN THE MATTER OF MACDOEL INVESTMENT LIMITED**

**AND IN THE MATTER OF SECTION 162 OF THE INSOLVENCY ACT, 2003**

**BETWEEN:**

**KILDARE FINANCE LIMITED (In Liquidation)**

<u>Applicant</u>

and

**MACDOEL INVESTMENT LIMITED**

<u>Respondent</u>

---

**ORDER APPOINTING LIQUIDATOR**

---

**Maples and Calder**

Kingston Chambers
Ritter House
PO Box 173
Road Town, Tortola
British Virgin Islands
(Ref:MIL/AHT/740041.000003)
Tel: +1 284-852-3000
Fax: +1 284-852-3097

<u>Legal Practitioners for the Applicant</u>

5

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                      Case No.:

DURANT INTERNATIONAL CORP                    Chapter 15

    Debtor in a Foreign Proceeding.
_____/

**ORDER GRANTING RECOGNITION OF FOREIGN
MAIN PROCEEDING PURSUANT TO §§ 1515 AND 1517 OF
THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

This matter came on for hearing on December   , 2019 ("Hearing"), upon the *Verified Petition for Recognition of Foreign Main Proceeding Pursuant To §§1515 and 1517 and Request for Hearing* (the "Chapter 15 Petition") [D.E. 2] of MATTHEW RICHARDSON and KEVIN HELLARD, (the "Foreign Representatives"), the duly appointed joint liquidators of the estate in bankruptcy of DURANT INTERNATIONAL CORP ("Durant" or "Debtor"). The Chapter 15 Petition seeks recognition and related relief, pursuant to Chapter 15 of the Bankruptcy Code, of the Debtor's bankruptcy case ("BVI Liquidation Case") pending in the High Court of Justice of the British Virgin Islands ("BVI Court"). The Court, having considered the Petition, the Verified

Motion, the Statement of the Foreign Representative and its respective attachments, the argument of counsel, and being otherwise duly informed, the Court makes the following Order.

The Court finds:

A.    Due and timely notice of the filing of the Chapter 15 Petition and the Hearing was given by the Foreign Representatives.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.    Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410.

D.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

E.    MATTHEW RICHARDSON and KEVIN HELLARD, each and collectively, qualify as "foreign representatives" as defined in 11 U.S.C. §101(24).

F.    This Chapter 15 case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1515, 1517.

G.    The Foreign Representatives have met the requirements of 11 U.S.C. §§ 1515(b), 1515(c), 1515(d), and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

H.    The BVI Liquidation Case is a foreign proceeding under 11 U.S.C. §§ 101(23) and 1502(4).

I.    The BVI Liquidation Case is entitled to recognition by this Court under 11 U.S.C. § 1517.

J.    The BVI Liquidation Case is pending in High Court of Justice of the British Virgin Islands.  The Debtor has its center of main interests in Road Town, Tortola, British Virgin Islands and, accordingly, the BVI Proceeding is a foreign main proceeding under 11 U.S.C. § 1502(4), entitled to recognition as foreign main proceeding under 11 U.S.C. § 1517(b)(1).

K.    The Foreign Representatives are entitled to all relief provided under 11 U.S.C. § 1520.

L.    The Foreign Representatives are further entitled to the relief expressly set forth in 11 U.S.C. § 1521.

M.    The relief granted by this Order is necessary and appropriate, in the interests of public and international comity, consistent with the public policy of the United States, warranted pursuant to 11 U.S.C. § 1521 and will not cause any hardship to the creditors of the Debtor or other parties that is not outweighed by the benefits of the relief being granted.

Accordingly, it is ORDERED AND ADJUDGED that:

1.    The BVI Liquidation Case is granted recognition as a "foreign main proceeding" under 11 U.S.C. § 1517.

2.    The BVI Liquidation Case and the Orders of the BVI Court shall be given full force and effect and be binding on and enforceable in the United States against all persons and entities. This includes without limitation, the Order appointing the Foreign Representatives as joint liquidators of the Debtor.

3.    The Foreign Representatives are entrusted with the full administration and realization of all or a part of the Debtor's bankruptcy estate and assets located in the United States.

4.    The Foreign Representatives, jointly and severally, shall have the authority to act independently to carry out any of the duties and powers granted by this Order.

5.    The provisions of 11 U.S.C. § 1520 apply to this proceeding.

6.    All persons and entities are stayed from commencing or continuing any action or proceeding concerning the assets, rights, obligations or liabilities, of the Debtor located in the United States.

7.      All persons and entities are stayed from executing against the assets of the Debtor located in the United States.

8.      All persons and entities are prohibited from transferring, encumbering, disposing of, or exercising control over of any assets of the Debtor located in the United States.

9.      All persons and entities provided notice of this Order who are in possession, custody or control of property, or the proceeds thereof, of the Debtor or the Debtor's bankruptcy estate located within the territorial jurisdiction of the United States, shall immediately advise the Foreign Representatives by written notice sent to the following addresses:

MATTHEW RICHARDSON and/or KEVIN HELLARD
Grant Thornton (British Virgin Islands) Limited
c/o Sequor Law, P.A.
Attention Gregory S. Grossman or Raul Torrao
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131

which written notice shall set forth: (i) the nature of such property or proceeds; (ii) when and how such property or proceeds came into the custody, possession or control of such person or entity; and (iii) the full identity and contact information for such person or entity. The Foreign Representatives shall file with the Court information demonstrating those persons and/or entities to whom he has provided notice of this Order.

10.     The Foreign Representatives are authorized to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtor or the Debtor's bankruptcy estate pursuant to §1521(a)(4), the Federal Rules of Bankruptcy Procedure, including without limitation the procedure of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, without further order of this Court.

11.     The Foreign Representatives are further authorized to operate and may exercise the powers of a trustee under, and to the extent provided by 11 U.S.C. §§ 363 and 552.

4

12.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a); (ii) Foreign Representatives are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) Foreign Representatives are authorized and empowered, and may in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

13.     No action taken by Foreign Representatives in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the BVI Liquidation Case or any order entered in or in respect of the Chapter 15 case (including any adversary proceedings or contested matters) will be deemed to constitute a waiver of immunity afforded the Foreign Representatives, including pursuant to 11 U.S.C. §§ 306 and 1510.

14.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 case, and any request by any person or entity for relief from the provisions of this Order.

15.     This Court shall retain jurisdiction with respect to the administration, realization, and distribution of the assets of the Debtor within the territorial jurisdiction of the United States.

# # #

Submitted by:
Gregory S. Grossman, Esq.
Raul Torrao, Esq.
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
Telephone:     (305) 372-8282
Facsimile:     (305) 372-8202

E-Mail:    ggrossman@sequorlaw.com
              rtorrao@sequorlaw.com

*(Attorney Gregory S. Grossman is directed to serve a copy of this Order on all interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the Order)*